IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Cedric Wise, ) | |
| ) | Civil Action No. 6:12-2091-RMG-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Jordan Moore, Ms. Snyder, Stephen ) Claytor, and Michael McCall, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the defendants' motion for summary judgment (doc. 31). The plaintiff, a state prisoner proceeding *pro se*, alleges he has been denied access to the courts and seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The defendants filed a motion for summary judgment on January 11, 2013. On January 14, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. The plaintiff filed his response on February 15, 2013.

**FACTS PRESENTED**

The plaintiff is currently and was at all times pertinent to his complaint incarcerated in Perry Correctional Institution, which is part of the South Carolina Department of Corrections ("SCDC"). He alleges that on September 27, 2011, he received a Final Order of Dismissal in his Application for Post-Conviction Relief ("PCR") (C.A.

2010-CP-43-1519). He further alleges that on October 17, 2011,[1] he had completed his notice of appeal and attempted to have the document copied by defendant Officer Moore. The plaintiff contends that defendant Moore refused him copies and alleges that the refusal violates SCDC policy (comp. ¶ 12). The plaintiff alleges that defendant Moore contacted defendant Associate Warden Claytor, and Associate Warden Claytor told the plaintiff to copy the document by hand (*id.* ¶ 16). The plaintiff alleges that he wrote Associate Warden Claytor and Warden McCall a letter regarding the incident on October 18, 2011 (*id.* ¶ 17; *see* doc. 1-5), and he filed a Step 1 grievance as an "emergency grievance" on October 17, 2011, complaining that he was being denied access to the courts because the defendants refused to make copies for him on October 17th (comp. ¶ 18; *see* doc. 1-6). He alleges the grievance was not processed as an emergency grievance (comp. ¶¶ 18-21). On November 15, 2011, the plaintiff wrote defendant Ms. Snyder, the Inmate Grievance Coordinator at Perry, requesting the status of his grievance. Ms. Snyder responded on November 18, 2011, stating, "That grievance has been received. Ms. McClendon and I are doing our best to get caught up" (*id.* ¶ 20; *see* doc. 1-7). The plaintiff claims that he has been denied access to the courts, that his grievance was not properly processed as an emergency grievance, and that the defendants acted with gross negligence.

The defendants have submitted the affidavits of Associate Warden Claytor and Officer Moore in support of their motion for summary judgment (doc. 31-3, Claytor aff.; doc. 31-4, Moore aff.). They state that since the summer of 2011, Officer Moore has been assigned the duties of providing security in the Education Building, delivering law books to the Special Management Unit ("SMU"), providing legal supplies to inmates, and providing photocopies to inmates with pending litigation (Claytor aff. ¶ 2; Moore aff. ¶ 2). Both state

---

[1] The plaintiff states in some places in his complaint that the date was October 27, 2011. However, the plaintiff submitted an affidavit in opposition to the motion for summary judgment stating that the date was actually October 17, 2011 (doc. 39-1, pl. aff. ¶ 2).

2

that prior to Officer Moore undertaking the copying duties, a system was implemented whereby inmates in specific dorms had assigned days to drop off documents for copying at 1 p.m. (Claytor aff. ¶ 3; Moore aff. ¶ 3). The plaintiff's dorm was supposed to drop off documents for copying on Wednesdays at 1 p.m. and pick up those copied documents on Thursdays at 1 p.m. (Moore aff. ¶¶ 3-4). Moore states that he would not have been available at 9:00 a.m. to receive documents from inmates for copying due to his other duties both inside and outside the Education Building (*id.* aff. ¶ 5).

Moore states that he recalls the plaintiff dropping off a large stack of documents that contained stapled documents, typed and printed documents, and handwritten documents not stamped by a court or notarized (Moore aff. ¶ 8). Moore states that he advised the plaintiff to get the documents straightened out, to get the handwritten items notarized, and to remove the staples out of the papers (*id.* ¶ 9). Moore states the plaintiff never advised him that he had a deadline but instead stated, "You will hear from my lawyer" and left the area (*id.* ¶ 10). Moore states that the plaintiff never returned with those papers, but he has since copied documents for the plaintiff on many occasions (*id.* ¶ 11).

Moore states that if the plaintiff had advised him of a deadline, he would have tried to copy the documents immediately in order to meet the deadline (Moore aff. ¶ 12). Moore has copied documents for inmates during his lunch break even when inmates brought the papers in at the last minute with a deadline (*id.*). Moore states that he has an allotted amount of paper for inmates, and he sometimes runs out. However, if an inmate has an immediate deadline, paper would be provided from other sources within the institution (*id.* ¶ 16; Claytor aff. ¶ 5).

SCDC policy GA-01.03 "Inmate Access to the Courts" governs photocopies for inmates. Paragraph 13.1 of that policy provides:

> Inmates may request photocopies of legal materials and documents to support a pleading. All photocopying must relate to challenging or appealing the inmates's sentence or to

3

> challenging the conditions of his/her confinement. Legal materials and documents that may be copied to support a pleading include: Disciplinary reports/forms; Institutional or State Classification Committee reports/forms; and Letters, forms, reports, and other documents received from SCDC or other outside officials, or that have answers or other information from personnel within SCDC that have to do with the subject of the pleading, including forms, letters, or documents that have been notarized.

(Claytor aff. ¶ 7). Paragraph 13.2 of that policy provides, in pertinent part, that "[d]ocuments that have been solely originated, generated, written, typed, or created by an inmate (the inmate may copy this information by hand)" will not be copied (Moore aff. ¶ 18; Claytor aff. ¶¶ 8).

In his affidavit submitted in opposition to the motion for summary judgment, the plaintiff states that defendant Officer Moore first refused to copy the appeal motion because it was not notarized. When the plaintiff showed him that it was notarized, Officer Moore stated that he would not make the copies because the document was handwritten. Officer Moore then called defendant Associate Warden Claytor on the phone and explained the situation. The plaintiff explained that he needed the copies to comply with the South Carolina Appellate Court Rules and his 30 day deadline. The plaintiff states that he knows the SCDC policy for obtaining copies, and he complied with policy, but the defendants refused to make the copies for him. According to the plaintiff, defendants Moore and Claytor provided him with the needed copies on November 28, 2011, and he sent his notice of appeal on November 30, 2011, which was past the 30 day deadline (doc. 39-1, pl. aff. ¶¶ 2-43; *see* doc. 1-4).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

***Access to the Courts***

The plaintiff alleges that the actions of defendants Moore and Claytor in refusing to make copies for him on October 17, 2011, denied him access to the courts in violation of his constitutional rights. The plaintiff does not allege that Warden McCall was

involved in this incident in any way, but does allege that Warden McCall is "legally responsible for the operation of Perry Correctional Institution and for the welfare of all the inmates . . . " (comp. ¶ 4).  To the extent the plaintiff seeks to hold Warden McCall liable in his supervisory capacity on this claim, the doctrine of respondeat superior generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977).  The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate:  (1)  the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2)  the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).  The plaintiff has failed to make the required showing here, and thus the plaintiff has failed to state a claim against Warden McCall for denial of access to the courts.

The United States Constitution guarantees prisoners the right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court held that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation.  This requirement can be satisfied by demonstrating that a non-frivolous legal claim was frustrated or impeded by some actual deprivation of access. *Id.* at 352-53.  A claim for failure to provide access to the courts must be pleaded with specificity. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).

The plaintiff pleaded guilty on November 14, 2005, to strong arm robbery, two counts of kidnaping and grand larceny.  He did not file a direct appeal.  The plaintiff filed his initial application for post-conviction relief ("PCR") on January 6, 2006 (2006-CP-43-0014).

6

The PCR application was denied, and the plaintiff's appeal was denied by the South Carolina Supreme Court on January 23, 2008.

The plaintiff filed a second application for PCR dated April 29, 2008 (2008-CP-43-1104). The State filed a return and motion to dismiss. A conditional order of dismissal was signed by Circuit Judge George C. James, Jr., on September 7, 2008. In that order, Judge James noted that the PCR application was successive to his prior application for PCR. Judge James further found that the application was barred by the applicable statute of limitations. The plaintiff was given an opportunity to provide specific reasons why the application should not be dismissed (doc. 31-7). A final order was filed on April 23, 2010, dismissing the plaintiff's PCR application. Judge James stated that the plaintiff failed to overcome the statute of limitations and successiveness bars, and the plaintiff had offered no new evidence material to the issue of guilt or innocence that could not have been found with due diligence previously (doc. 31-8). The plaintiff's appeal was dismissed by the South Carolina Supreme Court (docs. 31-9, 31-10).

The plaintiff subsequently filed his third PCR application on July 20, 2010 (2010-CP-43-1519) (doc. 31-11). The State filed a return and motion to dismiss, noting that the plaintiff did raise or could have raised the same grounds in his prior PCR applications (doc. 31-12). A conditional order of dismissal was issued on November 18, 2010 (doc. 31-13), and a final order of dismissal was issued on September 18, 2011 (doc. 31-14). In the final order, Circuit Judge W. Jeffrey Young found that the alleged evidence the plaintiff offered did not meet the requirements of "newly discovered evidence" and thus could not overcome the statute of limitations bar. The court further found that the allegations the plaintiff set forth in his responses to the conditional order of dismissal were "precisely those that were set forth in his previous PCR applications . . . meeting the very definition of a successive application" (doc. 31-14 at pp. 7-8).

7

The plaintiff argues that the defendants prevented him from timely filing a notice of intent to appeal the final order of dismissal of his third PCR application, and thus he has shown an actual injury. Construing the evidence in a light most favorable to the plaintiff, he appropriately provided documents for copying to defendant Officer Moore and Associate Warden Claytor on October 17, 2011, and the defendants refused to make the copies. However, this court finds that the plaintiff has failed to show an actual injury resulting from a denial of access to the courts, and thus his allegation of a constitutional violation fails. In his notice of appeal, which the plaintiff delivered to the Perry mail room on November 30, 2011, for mailing to the South Carolina Supreme Court, the plaintiff alleged ineffective assistance of counsel based upon certain newly discovered evidence: his sentencing hearing transcript, a Sumter County newspaper article, and his PCR hearing transcript (doc. 1-4 at pp. 2-21). As noted by Circuit Judge Young in the final order of dismissal of the third PCR application (doc. 1-2 at pp. 2-6), the plaintiff made the same allegations in his second PCR proceeding (*see* doc. 31-8 at pp. 3-4), and his appeal in that proceeding was dismissed by the South Carolina Supreme Court. The plaintiff has failed to show that this appeal in his third PCR had any merit as his petition was successive and barred by the statute of limitations. *See Bing v. McCabe*, C.A. No. 2:11-cv-3174-RBH-BHH, 2012 WL 6596814, at *4 (D.S.C. Nov. 16, 2012) (finding that inmate failed to state a claim for denial of access to the courts where the alleged injury concerned the impairment of the ability to file an appeal of a successive petition barred by the statute of limitations), *adopted by* 2012 WL 6596996 (Dec. 18, 2012). Accordingly, summary judgment is appropriate on this claim.

***Grievance***

The plaintiff asserts that his grievance in this matter should have been handled as an emergency grievance under SCDC policy (comp. ¶¶ 18-24). He alleges that Ms. Snyder was grossly negligent in failing to follow SCDC policy in determining whether

his grievance was an emergency (*id.* ¶ 20) and that Warden McCall was grossly negligent in failing to timely respond to his grievance (*id.* ¶¶ 21-24). The defendants submitted the affidavit of Ann Hallman, the Chief of the Inmate Grievance Branch of SCDC. Ms. Hallman testifies that the plaintiff's Step 1 grievance regarding his legal copying was received on November 7, 2011. The Warden responded stating that the plaintiff was "issued copies on July 11, 2011, November 28, 2011, January 4, 2012, and March 29, 2012. If you do not agree with my decision, you have five days to file a Step 2 appeal." The plaintiff's Step 2 appeal was received on July 13, 2012, and was still pending as of the date of Ms. Hallman's affidavit. According to Ms. Hallman, the plaintiff's grievance did not meet the criteria of an emergency grievance within the definition of SCDC grievance policy, which requires the inmate to demonstrate substantial risk of personal injury or other serious and irreparable harm for a grievance to be processed as an emergency. Thus, Ms. Hallman states that it was proper for the Inmate Grievance Coordinator to process the grievance as a non-emergency grievance (doc. 31-2, Hallman aff. ¶¶ 3-7).

Viewing the evidence in a light most positive to the plaintiff, even if his grievance should have been treated as an emergency grievance, his allegations do not state a constitutional claim. "[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Even assuming that the defendants violated their own grievance procedures, such actions do not state a claim that is actionable under Section 1983. *Brown v. Dodson*, 863 F.Supp. 284, 285 (W.D. Va.1994). Based upon the foregoing, this cause of action is without merit and should be dismissed.

### Qualified Immunity

As an additional ground for dismissal, the defendants in their individual capacities are entitled to qualified immunity as described in *Harlow v. Fitzgerald*, 457 U.S.

800, 818 (1982) and its progeny, as their conduct did not violate any constitutional right of the plaintiff.

*State Law Claims*

Having found that the defendants are entitled to summary judgment regarding the plaintiff's constitutional claims, it is recommended that the court decline to exercise supplemental jurisdiction over any claims for relief asserted pursuant to state law, including any claims under the South Carolina Tort Claims Act. *See* 28 U.S.C. § 1367(c)(3).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment (doc. 31) be granted.

s/ Kevin F. McDonald
United States Magistrate Judge

March 28, 2013
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).